2013, 1064. Mr. Zito. Good morning, Your Honor. This case on appeal presents two issues. One issue is the improper jury instruction, and the other is the improper imposition of time restrictions, the unfairness of the trial. It goes without saying or reiteration that if you instruct the jury to compare the two products, as opposed to comparing them, compare the accused product to the claim, that's an improper instruction. That's an error under the plain error statute. But that's not what the jury instruction here said, right? What the judge instructed the jury after, in response to their question, they may not have been looking at the two products. He instructed them that the two products do not have to be identical. That is telling the jury that it's okay, that you're allowed to. The jury was having difficulty looking at the product. Well, the statement is literally true and correct, right? That not every element of the two products must be identical, right? Right, but this statement was not made to patent attorneys. It was not made in the course of a lecture. It was made in response to a jury question. The jury said, we're looking at words, and we're looking at a physical product. And we're having a difficulty here because one of the elements, one of the things seems to be different. The judge gave them two sentences in response, strong words coming from a federal judge to a lay jury that said, what you would infer as a jury is, if you're having difficulty looking at those words in that product, look at the two products, compare them. They don't have to be identical, but you can look over there. And that's an improper instruction. We don't have to show on appeal that the jury actually looked at the two products because we don't know what the jury did. We don't have to show that that was the influence that made the decision. We need to show that you cannot instruct the jury to, not every element of the two products must be identical. As a juror, and even as an attorney, that suggests to me that some of the elements of the two products should be identical, not all of them. Well, right there, in order to find out whether they're identical or not identical, I have to compare the two products. And the jury had the plaintiff's product and the defendant's product in the jury room with plastic bags. But the difference in this case is our plastic bag has a pouch. We believe the defendant's plastic bag has a pouch. They refer to it as a sleeve. It has a slightly different shape and performs the exact same function. So that was the issue. When the judge told them, they only asked one question. They only got one response. It was only two sentences. It's not like it was buried in the original instructions. Had some phrase like this been buried in the original hour-and-a-half reading of instructions, perhaps you could argue it was not influential. And is it your view that you had no idea that this sentence was going to be amended? As the judge said, all we knew was that the judge's law clerk suggested changing the second sentence. That's all the judge said. As soon as that occurred, I said, Your Honor, do you think they're comparing the products? He said, I don't know. So I expressed concern that you can't compare products. The judge, at the end of that session, which is page A1381 of the appendix, the judge asked, were there any other suggestions? He was still taking suggestions. Mr. Triantafyllis, my opposing counsel, said, you should just answer yes, one word. The judge said, I wish they had never raised it, but since they have, I think I need to be a little more responsive than just saying yes. Thank you very much. He said, I'm going to go out, figure out what the answer is, come back and tell you, then I'll give it to the jurors. Who would have time to look at what his answer was going to be and object, formally object? He didn't do that. He simply wrote down the answer, adopted the law clerk's suggestion, not any of the attorney's suggestion, the law clerk's suggestion, and gave that to the jury. Next thing we know, 20 minutes later, the jury comes back with a decision. At that point, we were handed the answer to the instruction. And your view is that before that, that before seeing this one sentence, the jury understood that they couldn't compare the two products, they had to compare the claims to the product, and that this sentence definitively convinced them that no, that's not the way you do it. You do it by comparing the products. Is that your interpretation, your view of the effect the sentence had? Yes. Put yourself in a jury room where you've deliberated for several hours, and you're looking at words of a claim. As we all know, it's written in archaic language. And then you've got a claim construction written by the judge, which is semi-archaic language. And you're having difficulty. But you have these two plastic bags sitting right there. You're not sure. Maybe you think you can, maybe you think you can't. It doesn't matter. The judge comes back and says, you can look at the plastic bags, but you don't have to find them identical. Well, that's not all he said. The first sentence said quite clearly that you, I don't know what it is, that you apply the claims to the product, right? Absolutely. Right. He says while you're applying the claim language to the product, you can look at the two products. He says, however, right after saying compare the claim language to the product, he says, however, not every element of the two products must be identical. So it's telling you as a juror, here's a shortcut. Pick up those two plastic bags. Look at them. Stop looking at that claim. Look at those bags. They don't have to be identical. Do you want to get to your second point? Sure. I think the first point is very important. I think that has to be, you can't let this be an instruction to a jury from a district judge that it's improper in a patent case. And this case needs to be reversed because of that. The other issue is the fairness of the trial. Yes. If an attorney says I'm going to take three hours to do something or 10 minutes or 15 minutes, you can start a timer and cut them off at that point. That's perfectly fine. If the attorney says it's going to take me two hours or a day and a half and it takes him six days, the judge can give him that leeway. Both of those are perfectly fine. But what happened in this case is that opposing counsel said I'll take a day and a half. And I said, great, I'll take a day and a half. We'll take a three-day trial. Day and a half into it, the judge kept telling him to hurry up and never cut them off, never said stop, never said, you know, that's it, that's enough, 10 minutes, nothing. All the way through the end of the day on Thursday, which is a half day. Two hours into it. So your view is that we on review here should conclude that the district court abused his discretion by not cutting them off at a certain point in the trial? No. Where is the abuse of discretion? By changing that standard as soon as our case began and cutting people off at specific times. Whether or not I said one day, two hours. Well, he didn't cut you off if it's correct that you said you only need two or three hours, right? That's not, then why would, there was no opportunity to cut you off or not cut you off, right? Well, if he had, but he applied the, the two hours we're going to finish by three o'clock on Friday standard by cutting me off and limiting things to 10 minutes and 15 minutes as we put forth in our brief. Opposing counsel has said it's going to take a day and a half. If he had cut opposing counsel off in the middle of the day on Tuesday, I'd say that's fine, equal treatment. My point is, yes, he can cut me off. If I say two hours, he can cut me off in two hours, but he has to have done the same thing in the other half of the trial. You can't, you can't treat both sides unequally. Either treatment is fine. Do you have any case, I mean, what's the closest case you have? I mean, this is a big issue that's coming for an appellate tribunal here. I don't recall ever sort of getting this kind of appeal. Do you have any case law? We don't have any case law. And that's why it drops into the abuse of discretion standard, not the noble review or clear error standard. We've cited the cases that talk about unfair trials, but we found no case that had this sort of a situation. That's correct. And we think that, we think that kind of treatment would signal to a jury that there's a preferential position of the court for one side versus the other. That this is, this is very important. We let him talk for days and days and days and days. This other guy, he's not very important. I'm going to cut him off right at an hour, right at 15 minutes, whatever. And it will show a bias towards the jury. We'll save the remainder of your time, Mr. Zito. We have Ms. Jones. Good morning. May it please the court. I'd like to start by addressing the proper standard of review for the supplemental jury instruction issue. Because ReadyBags did not object to the language of the supplemental jury instruction, this court's review of the district court's denial of a new trial based on the alleged error should be limited to plain error. But can you be a little, I'm a little confused on the record here. I mean, there are people telling different variations of a story. Why is it clear, what in the record indicates to you that it's clear that they had an opportunity to object and did not? Well, I think we've pointed in our brief to the discussion that the district court had in the supplemental, in the hearing of the supplemental jury instruction issue. And the proposed language was discussed with counsel. And counsel for ReadyBags expressed a concern, but the only concern he expressed was that the jury may be comparing products. He didn't express any concern that the language of the district court's law clerk. But he knew at some point that the district court was going to embrace and put in the language of the law clerk into the jury instruction and he had time after that to object? Well, I think the purpose of holding this hearing is to allow for everyone to vet their concerns and suggestions. And so when this language came up, it was the obligation of counsel to object if he had any problems with the language that was proposed. Now, counsel just suggested that when the court recessed at the end of that hearing, he suggested that he was going to come back and tell them what he adopted and give them an opportunity to object. But the record does not reflect that. He just said thank you to the district court judge to come back and say, this is what I've objected to. So your view is that what the law clerk was proposing, which is the second sentence that they were objecting to, was on the table? Right. And if there was a problem with it, then he should have let the district court judge know at that time. To require the district court judge to come back yet again, I think would be to hold him to an overly rigid process in which the district court judge has argued in its reply brief that this issue, off the standard of review, is governed by federal circuit law. But this court held in Lazar Kaplan v. Photoscribe Technology, which can be found at 628 F. 3rd 359, that you'll look to regional circuit law to determine whether a party has properly preserved its objection to a jury instruction. In our brief, we pointed to the Fifth Circuit's holding in Worth v. International Harvester, as well, that the party that's saying that it made the objection bears the burden of showing that it made the specific objection. And here, ReadyBag has not shown that it made the specific objection. And it actually doesn't state that it did not object. It just says it wasn't given the opportunity to object, but I think the fact that the district court held this proceeding demonstrates otherwise. So because ReadyBag did not give, or was given the position opportunity to object, it decided to do so, this court's review of this issue should be limited to plain error. But putting aside the applicable standard of review, the supplemental jury instruction itself was not legally erroneous and it was not prejudicial. No one in the case, not the judge, the attorneys, the witnesses, experts, suggested that the proper test for infringement was comparing products. In fact, the district court explained in its opinion that it was a concern that the jury might have been comparing products, but led it to adopt a second sentence that's now disputed, that not every element of the two products needs to be identical. And the instruction correctly directed the jury to the patented claim to determine infringement, stating that each and every element of the patented claim must be found in BetterBag's product to constitute infringement. So when you consider the instruction as a whole, it cannot be said to have directed the jury to compare products to determine infringement. But even if the instruction did not completely foreclose the jury from doing so, from comparing products, any alleged error would be harmless, not prejudicial. Because when you look at both sentences, the jury would have understood that there is no point in comparing the products because whether the products are identical or they're not identical, it has no bearing on infringement. They were properly instructed that to determine infringement, they need to look at the patented claim and determine whether each and every element is in BetterBag's product. Can I just, what are we to make of the judge's comments that this trial was not a good one and he strongly attempted to have another? Did he take those comments into consideration when reviewing under a boost of discretion? Well, I think that throughout the trial, the district court realized that it was extending longer than the parties had anticipated. And he didn't find that either side was to blame for that. But he did offer various points. He offered ReadyBag's counsel more time or to extend the trial until the next week. But ReadyBag decided to take that offer and said that it only needed three hours. In fact, the evening when BetterBag closed his case, Thursday afternoon, the court again addressed this issue and ReadyBag's counsel said it only needed three hours to present his case. And the record shows that ReadyBag was in fact given three hours to present his case on Friday if you go through and look at the time. And one of the reasons that ReadyBag likely only needed three hours to present his case is that they had already put on several of their witnesses during BetterBag's case in chief. And if you want an example, you can look at Appendix 1043. When they were opening their case, they said they put on their first witness, Jennifer Boyer, during BetterBag's case. So they did in fact have more time to present their case than it did us. And the record further demonstrates that after ReadyBag's counsel, sorry, that after trial and a post-verdict hearing, ReadyBag's counsel admitted that they were able to put on all of their evidence and they would not have done anything differently. Yeah, but I think his argument may be a little different, right? I mean, his view is that it prejudiced the view of the jury with respect to the parties given the differential treatment that the judge gave. If we had a much more important case, we should have listened to him for a much longer time. So that's a little different, right? I understand that point. I think that the difference is that when BetterBag's was presenting his case and it felt that it needed more time, it told the court that it needed more time and it was random at that time. ReadyBag's was offered the same opportunity to take more time, but it continually said, no, we want three hours, we don't need that extra time, and so the jury that the trial would put in on Friday, when Friday came around, he tried to make sure that that actually happened given that that's what Johnson had asked for. So I think that if ReadyBag had came in on Friday and said, you know what, I need extra time, I would like to extend the trial into the next week, then there would have been equal treatment, but that simply didn't happen. If they have enough alternates, they wouldn't have to redo this, right? Right, that's not my understanding that they would have had to redo the trial if they extended it into the next week, and I think that's why the district court judged it as an option. Unless there are additional questions, we'll rest on a brief. Thank you, Ms. Jones. Mr. Vito has six minutes of rebuttal time. Sir, thank you. Actually, on the question of juror, we would have been down to the minimum number of jurors. We lost three over the weekend, but it would have been down to the minimum number of jurors the next week, assuming that all the other six jurors did actually show up. So there was a question, but it was not a, we wouldn't have had to start again. Your contention on this time issue is that by limiting your time, the judge conveyed to the jury, for want of a better word, displeasure with your case. Is that the idea? Yes. Now, looking back over the entire trial, is there anything in the record of the judge appearing to come down harder on one side than the other, or hectoring one side as opposed to the other? Ms. Jones has said that, you know, the trial went on longer than planned, and neither of the parties for that. But looking back from your perspective over the record, do we have a record here that shows the judge leaving aside this issue about the end of the trial and the time of giving one side for want of a better word a harder time than the other so as to convey to the jury prejudice against that side? The judge actually did say that most of the blame for the extra time was on the other side of the case. And he did say that. His statement about Minicopa and the clinical court says, and I believe Mr. Zetel was very rushed in his presentation, which is not an equal statement. During the case, the judge, yes, actually did show disfavor, not for me, but for some of the arguments that Mr. Phillis was making regarding some of the contract claims, which he then dismissed as having no substantial evidence anyway. So if there was any direct prejudicial statements that were not actually directed at me, they were actually directed at the other side. Well, that would suggest then that wouldn't that, it doesn't make sense, you're being very candid and that's appropriate, but it just seems to me it's difficult given the context that you've described at the whole trial for us to say that this jury could reasonably conclude that there was prejudice directed against one side when, as you've pointed out, the judge came down harder on the other side during the rest of the trial. Well, during the rest of the trial, at one point. Well, yeah, but to the extent there was criticism directed at anybody, you've pointed out it was directed at the better bag side of the case. Correct. Moving from the issue of prejudicial back to the issue of the jury instruction. The court said on A1379 towards the end of the discussion about the jury instruction, okay, anybody else want to say anything? I'll make my decision, but does anybody else want to say anything? He had not made a decision and not presented us with an answer. There was no opportunity to object and I did raise the objection don't compare the products. Okay. It was a free-flowing discussion of what sorts of things do you want to tell the jury? From the word yes to my suggestion, tell them that if one of the elements is missing, you find non-infringement. If it's just different, you find infringement. And if you don't find infringement, you look at the doctrine of equivalence. I have much longer suggestions than you can see on the record. We're vanging things about and he said I'll make my decision. We then had a short discussion where yes came up and we discussed the word identical. There was clearly no suggestion at any point by the court that they were adopting the law clerk's second sentence. So there was no opportunity to object beyond the fact that I did actually raise an objection to comparing products. So to say that we didn't object and therefore this jury instruction says it's not correct. However, even if the court were to find that we didn't formally object which is incorrect, even under the clear error standard which is what opposing counsel says it drops to, it's clearly an error to tell them in the context of comparing the claims to the accused product, you should compare the products and don't find all the elements identical. Yes, you can break it apart and say oh look, they had the right instruction in the first sentence and so they would ignore the second sentence. No, the second sentence starts with however so it modifies the first sentence. It invalidates the correct first sentence by saying however not all the elements of the two products must be identical. You're telling them this is the context in which you do the claim analysis and it's not. It's not proper. It's not an instruction that needs to be part of the patent law. It's not an instruction that needs to stand as being endorsed by this court as a proper instruction and even the judge didn't understand that when he said, and I quoted that in my brief, the judge said it's harmless error. They're allowed to do that as long as they don't concentrate on it. Even the judge did not understand after we had the hearing six months after the trial we had a hearing on the motions and the judge said and I quoted that in my responsive brief and other briefs that that's okay it's harmless error. They're allowed to do that as long as they don't know. As long as they don't think they have to do it. As long as they know it's permissible and I think that's the word he used as long as it's permissible to compare the products we didn't tell them they had to then that jury instruction is okay. You just can't let that law stand. It's not proper and it's not how patented jury instruction is. Thank you. Thank you Mr. Zeig.